UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| J.K., *et al.*, | ) | CASE NO. 5:14CV1985 |
| | ) | |
| Plaintiffs, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| Hudson City School District Board of Education, | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This matter is before the undersigned on a motion for judgment on the administrative record filed by Plaintiffs J.K. and T.K individually and as parents and next friends of A.K., a child with a disability (collectively, "Plaintiffs"), on February 2, 2015.  ECF Dkt. #17. Defendant Hudson City School District Board of Education ("Defendant") filed a motion in opposition to Plaintiffs' motion for judgment on the administrative record on February 25, 2015. ECF Dkt. #19.  Plaintiffs filed a reply brief on March 11, 2015.  ECF Dkt. #20.  This matter was referred to the undersigned on July 14, 2015.  ECF Dkt. # 21.

For the following reasons, the undersigned recommends that the Court DENY Plaintiffs' motion for judgment on the administrative record.

## I.      FACTUAL AND PROCEDURAL HISTORY

The record in the instant case is voluminous and, for that reason, was not filed electronically.  Due to the private nature of the information contained in the record, the Court ordered that the entire administrative record be sealed.  The undersigned notes that the relevant portions of the record have been reviewed.

The instant Report and Recommendation cites to the briefs of the parties, the transcript, exhibits filed by the parties, and two administrative rulings by the Impartial Hearing Officer ("IHO") and the State Level Review Officer ("SLRO").  The parties' briefs are referenced by the page numbers assigned by the Court's electronic docketing system.  The transcript is composed

of eighteen volumes (both in standard format and a condensed format) ranging from September 17, 2013 to December 3, 2013.  The eighteen volumes are consecutively paginated from page 1 in the in the September 17, 2013 volume to page 1,663 in the in December 3, 2013 volume. Plaintiffs' exhibits are designated with letters and Defendant's exhibits are designated with numbers.  The decision of the IHO is referred to as "IHO Final Decision" and the decision of the SLRO is referred to as "SLRO Final Decision and Entry."

In December 2005, Defendant determined that A.K. was eligible for special education services under the Individuals with Disabilities Education Improvement Act ("IDEIA") as a preschooler with disabilities.  ECF Dkt. #17 at 5; Ex. D. at P00074.  An individualized education program ("IEP") was developed and implemented from January 2006 through May 2006.  ECF Dkt. #19 at 7; Ex. 67 at BOARDAK000458.  In September 2006, A.K's mother enrolled her at Monarch School ("Monarch"), a school specializing in educating students with autism, for the 2006-2007 school year.  ECF Dkt. #17 at 5; Ex. D at P00074; ECF Dkt. #19 at 7; Transcript ("Tr.") at 12, 264-65.

To help cover the costs associated with attending Monarch, A.K.'s parents utilized Ohio's Autism Scholarship Program ("ASP").  ECF Dkt. #19 at 7; Tr. at 271.  The ASP offers scholarships of up to $20,000 for qualifying students.  O.R.C. § 3310.41.  A child may only participate in the ASP if the school district in which the child is entitled to attend has developed an IEP that has been agreed to by the child's guardian(s).  O.R.C. § 3310.41(A)(7)-(B); O.A.C. § 3301-103-01(L).  The district of residence is not required to provide a child participating in the ASP with free appropriate public education ("FAPE") while a parent of the child is receiving funds from the ASP.  O.A.C. § 3301-103-04(A)(7).  The ASP scholarship shall not be awarded to the parent of a child if the child's IEP is being developed by the school district in which the child is attending school or while any administrative or judicial mediation or proceedings with respect to the contents of the child's IEP are pending.  O.A.C. § 3301-103-02(E)(1).

On October 23, 2006, A.K's mother was murdered by A.K.'s father while A.K. was present in their home.  ECF Dkt. #17 at 5.  Since the homicide, A.K.'s father has been incarcerated without any parental rights to A.K.  *Id.*  Following the death of her mother, A.K.'s

grandparents, T.K. and J.K. (collectively, "Grandparents"), were designated as A.K.'s legal guardians. *Id.;* Tr. at 9.  Grandparents reside in South Euclid, Ohio.  *Id.*  Since the address of A.K.'s parents immediately prior to A.K.'s relocation remains in Hudson, OH, Hudson City School District remains a school district of residence that is responsible for the education of A.K. O.R.C. § 3313.64(I)(1).

A.K. has continued to attend Monarch since 2006 with the ASP covering $20,000 of the $76,000 tuition.  ECF Dkt. # 17 at 5; Tr. at 12-13.  Grandparents have paid the additional $56,000 balance towards A.K.'s tuition at Monarch.  ECF Dkt. #19 at 7; Tr. at 271.  Since Grandparents reside in South Euclid, OH, both Hudson and South Euclid are school districts of residence for A.K.  O.R.C. § 3313.64(B)(2)(c); O.R.C. § 3313.65(C).

On May 4, 2011, A.K.'s reevaluation was completed by the Cleveland Heights-University Heights City School District, the district in which Monarch was located.  ECF Dkt. #19 at 8; Ex. 67.  Carrie Hutchinson, a psychologist and special education coordinator for Defendant, attended the reevaluation meeting, and Grandparents signed the reevaluation report.  ECF Dkt. #19 at 8; Ex. 67 at BOARDAK00462.  Grandparents and Defendant met once in August 2011 and once in September 2011, however, the latter meeting was not an IEP meeting.  ECF Dkt. 19 at 8; Ex. 57; Tr. at 160-62.  Following these meetings, A.K. continued to attend Monarch.  *Id.*  On April 27, 2012, Grandparents consented to A.K.'s 2012-2013 school year IEP after review with the IEP team.  ECF Dkt. #19 at 9; Ex. 55; Tr. 28-29.  On August 22, 2012, T.K. signed paperwork accepting the $20,000 from the ASP for the 2012-2013 school year.  ECF Dkt. #19 at 9; Defendant's Ex. 53.

On September 7, 2012, T.K. notified Defendant, South Euclid-Lyndhurst City Schools, and Monarch that Plaintiffs were withdrawing their participation in the ASP, objected to the 2012-2013 IEP, and that Grandparents were electing to continue A.K.'s enrollment at Monarch. ECF Dkt. #19 at 9; Ex. 51; Tr. at 277-78.  On September 11, 2012, Plaintiffs notified Defendant, in the form of a due process request, that Grandparents were seeking to have A.K. placed at Monarch at Defendant's expense as a result of Defendant's failure to provide A.K. with FAPE. ECF Dkt. #19 at 9; Ex. 50 at BOARDAK00391; Tr. at 279.  Defendant responded by

reconvening the IEP team responsible for A.K.'s IEP.  ECF Dkt. #19 at 9; Tr. at 168-69.

Grandparents, through counsel, notified Defendant that they would not be participating in the IEP

meeting because counsel no longer felt that it was proper, and rather, suggested that a resolution

session or mediation be called.  ECF Dkt. #19 at 9; Ex. 47; Tr. at 280.  A.K.'s 2012-2013 school

year IEP was revised by Defendant.  ECf Dkt. #19 at 9; Exs. #44, 46; Tr. at 174-76, 420-21.

Subsequently, Grandparents dismissed their due process request.  ECF Dkt. #19 at 9; Ex. 43; Tr.

281-82.

   In the spring of 2013, Plaintiffs and Defendant began to discuss the development of

A.K.'s 2013-2014 IEP.  ECF Dkt. #17 at 5; Ex. F.  Defendant and Monarch also began

communications regarding A.K.'s 2013-2014 IEP.  ECF Dkt. #17 at 5-6; Ex. T; ECF Dkt. #19 at

10; Exs. 34, 36-39.

   On April 25, 2013, Defendant and Grandparents met to conduct a review of the proposed

modifications to A.K.'s IEP.  ECF Dkt. #17 at 6; ECF Dkt. #19 at 10.  No representative from

Monarch was present, per the request of T.K., who chose instead to bring his own advocate,

Sandee Winkelman.  ECF Dkt. #19 at 10; Tr. at 1542-43.  At the April 25, 2013 meeting,

Grandparents expressed concerns over some facets of the proposed IEP.  ECF Dkt. #17 at 6; Ex.

26 at BOARDAK00252.  On May 3, 2013, Defendant sent Grandparents notice addressing

disagreements, questions, and concerns discussed at the April 25, 2013 meeting.  ECF Dkt. #19 at

10; Ex. 26.  On May 10, 2013, Grandparents signed and returned their written consents to the

proposed IEP, asked that the IEP be implemented, and asked that Defendant make transportation

arrangements for A.K.  ECF Dkt. #17 at 6; ECF Dkt. #19 at 10; Ex. 23; Tr. at 39-40.

   The parties agreed to meet again to discuss A.K.'s transition from Monarch to Hudson.

ECF Dkt. #17 at 6; ECF Dkt. #19 at 11; Ex. 19.  A meeting was held to discuss A.K.'s transition

on May 21, 2013.  *Id.*  No representative from Monarch attended the May 21, 2013 meeting.

ECF Dkt. #19 at 11; Tr. at 559.  At the May 21, 2013 meeting, Defendant informed

Grandparents, who attended the meeting with their advocate, that Defendant could not begin

A.K.'s transition prior to the termination of A.K.'s participation in the ASP.  ECF Dkt. #17 at 6;

ECF Dkt. #19 at 11; Ex. 15 at BOARDAK00207.  Grandparents did not wish to abruptly remove

-4-

A.K. from Monarch and withdraw from the ASP.  ECF Dkt. #17 at 6; Tr. at 42.  Prior to concluding the meeting, the parties briefly addressed extended school year ("ESY") options, and Grandparents expressed some concern over the proposed IEP.  ECF Dkt. #19 at 11; Ex. 15.  On June 7, 2013, Defendant attempted to contact J.K. with a further inquiry regarding T.K.'s ESY plans.  J.K. responded on June 10, 2013, and indicated that Grandparents were waiting for a doctor to complete an evaluation of T.K. and that she would contact Defendant at that time.  ECF Dkt. #19 at 11; Ex. 14.

During this time, Grandparents initiated an evaluation of A.K. by Dr. Mark Lovinger, a clinical psychologist.  ECF Dkt. #17 at 7; Ex. P; Tr. at 43.  Grandparents also requested that one of A.K.'s service providers observe Defendant's proposed program.  ECF Dkt. #17 at 7.  Heidi Pitlor, an intervention specialist at Monarch, conducted the observation of the proposed classroom, and found the proposed classroom to be concerning for A.K. due to various factors such as hard floors, proximity to loud areas of the school, lighting, and travel distance between other rooms.  ECF Dkt. #17 at 7; Tr. at 1175-77.

On July 16, 2013, Defenfant was provided a copy of Dr. Lovinger's psychological report.  ECF Dkt. #17 at 7; Ex. P; ECF Dkt. #19 at 11; Ex. 13.  In his report, Dr. Lovinger opined that a transition from Monarch to Hudson would cause A.K. irreparable injury and would compromise her current levels of functioning.  ECF Dkt. #17 at 7; Exs. P at P00235, S; ECF Dkt. #19 at 11-12; Ex. 13 at BOARDAK00204.  Contemporaneously with the provision of Dr. Lovinger's report, Grandparents, through a letter from counsel, informed Defendant that they would be placing A.K. at Monarch for the 2013-2014 school year "at [Defendant's] expense."  ECF Dkt. #19 at 12; Ex. 13 at BOARDAK00199.  The parties agreed to meet on August 2, 2013.  ECF Dkt. #17 at 7; ECF Dkt. #19 at 12.  Defendant retained the services of a doctor specializing in the areas of autism and anxiety, Dr. Michelle DePolo, to consider the issues raised in Dr. Lovinger's report.  ECF Dkt. #19 at 12; Tr. at 119.  On the day prior to the scheduled meeting to discuss A.K.'s IEP, Plaintiffs served Defendant with a request for a due process hearing.  ECF Dkt. #19 at 12; Ex. 3.

On August 2, 2013, the parties met to discuss A.K.'s IEP.  ECF Dkt. #17 at 7; ECF Dkt #19 at 12.  What exactly occurred and what was discussed at this meeting is unclear.  Following the meeting, Defendant prepared an amended 2013-2014 IEP, which was mailed to Grandparents on August 5, 2013.  ECF Dkt. #19 at 13; Exs. 7, 8.  In addition to the amended IEP, releases to contact Dr. Lovinger regarding A.K.'s evaluation were sent by Defendant to Grandparents.  ECF Dkt. #19 at 13; Ex. 7 at BOARDAK00134.  On September 7, 2013, Grandparents responded, indicating that they would not sign the release forms because they had already made the decision not to transition A.K. to Hudson, and had initiated an administrate due process proceeding and filed a request for injunctive relief in federal court.  ECF Dkt. #19 at 13; Ex. 4.

The IHO assigned to the case held a disclosure conference on September 17, 2013, and held the due process hearing over sixteen days between September 24, 2013 and December 3, 2013.  IHO Final Decision at 5.  The issues considered by the IHO were whether: (1) [Defendant] denied [A.K.] FAPE by failing to properly identify her educational needs; (2) [Defendant] denied [A.K.] FAPE by denying her legal guardians meaningful input at the IEP meeting developing the April 2013 IEP; (3)  [Defendant] denied [A.K.] FAPE by developing an inappropriate IEP for the 2013-2014 school year; and (4) [Defendant] denied [A.K.] FAPE by failing to offer [A.K.] appropriate [ESY] services for the 2013 summer.  *Id.*  On February 7, 2014, the IHO found in favor of Defendant on all issues.  *Id.* at 43.  Plaintiffs appealed the decision of the IHO on March 21, 2014, and the appeal was heard by a SLRO.  On June 10, 2014, the SLRO issued a decision affirming the IHO's decision. SLRO Final Decision and Entry at 42.  Plaintiffs appealed the SLRO's decision to this Court by filing a Complaint on September 8, 2014.  ECF Dkt. #1.

## II.    STANDARD OF REVIEW

A district court reviews IDEIA cases under a modified de novo standard, meaning that the district court may set aside administrative findings in an IDEIA case "only if the evidence before the court is more likely than not to preclude the administrative decision from being justified based on the agency's presumed educational expertise, a fair estimate of the worth of the testimony, or both."  *N.W. ex rel J.W. v. Boone County Bd. of Educ.*, 763 F.3d 611, 614 (6th Cir. 2014) (citing *Bd. of Educ. of Fayette Cnty. v. L.M.*, 478 F.3d 307, 312-13 (6th Cir. 2007)); *Berger*

*v. Medina City Sch. Dist.*, 348 F.3d 513, 519 (6th Cir. 2003).  "Less weight is due to an agency's determinations on matters for which educational expertise is not relevant because a federal court is just as well suited to evaluate the situation."  *Deal v. Hamilton Cnty. Bd. of Educ.*, 392 F.3d 840, 849 (6th Cir. 2004) (quoting *McLaughlin v. Holt Pub. Sch. Bd. of Educ.*, 320 F.3d 663, 669 (6th Cir. 2003)).  "More weight, however, is due to an agency's determinations on matters for which educational expertise is relevant."  *Id.* (internal quotation marks omitted).  In applying the modified de novo standard of review, district courts may not "simply adopt the state administrative findings without an independent re-examination of the evidence," nor may the courts "substitute their own notions of sound educational policy for those of the school authorities which they review."  *Woods v. Northport Public School*, 487 Fed. App'x 968, 973 (6th Cir. 2012) (quoting *Doe v. Metro. Nashville Pub. Schs.*, 133 F.3d 384, 387 (6th Cir. 1998) and *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 624 (6th Cir. 1990)).

Following the filing of an IDEIA action, the district court: "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant relief as it determines appropriate."  20 U.S.C. § 1415(i)(2)(C). "In doing so, the district court 'should make an independent decision based on the preponderance of the evidence but also give due weight to the determinations made during the state administrative process.'" *Deal*, 392 F.3d at 849 (citing *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982)).

### III.   LAW AND ANALYSIS

#### A.   IDEIA and FAPE

The IDEIA "requires States to provide disabled children with a 'FAPE.'" *Florence Co. Sch. Dist. Four v. Carter*, 510 U.S. 7, 9 (1993) (quoting 20 U.S.C. § 1400 *et seq.*).  The IDEIA aims to give children with disabilities a FAPE designed to meet their unique needs.  *Burilovich v. Bd. of Educ. of Lincoln Consol. Schools*, 208 F.3d 560, 565 (6th Cir. 2000).  A FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction. *Rowley*, 458 U.S. at 188-89.  School districts receiving funds under the IDEIA must establish an

-7-

IEP for each child with a disability.  *Knable v. Bexley City School Dist.,* 238 F.3d 755, 762 (6th

Cir. 2001) (citing 20 U.S.C. § 1415(a)(5)).  A school district has met this obligation if it has (1)

complied with the procedural requirements of the IDEIA, and (2) developed an IEP which is

reasonably calculated to provide an educational benefit.  *Rowley*, 458 U.S. at 206-07.  "If these

requirements are met, the State has complied with the obligations imposed by Congress and the

courts can require no more."  *Id.* at 207.

   The court should strictly review an IEP for procedural compliance, however, technical

deviations will not render an IEP invalid.  *Deal*, 392 F.3d at 854.  A procedural violation that

caused substantive harm may result in the grant of such relief that the court determines is

appropriate.  *Knable*, 238 F.3d at 764 (citing 20 U.S.C. § 1415(e)(2)).  The "basic floor of

opportunity" provided by the IDEIA consists of access to specialized instruction and related

services that are individually designed to provide educational benefit to the handicapped child.

*Rowley*, 458 U.S. at 201.  The party challenging the validity of the IEP has the burden of proving

by a preponderance of the evidence that the IEP was inadequate.  *Doe v. Defendant I*, 898 F.2d

1186, 1191 (6th Cir. 1990) (citing *Tatro v. State of Texas*, 703 F.2d 823, 830 (5th Cir), *aff'd in part

and rev'd in part sub nom.*, *Irving Indep. Sch. Dist. v. Tatro*, 468 U.S. 883 (1984)).  The least

restrictive environment ("LRE") requirement mandates that each school district shall ensure, to

the maximum extent possible, that children with disabilities are educated with children who are

not disabled.  O.R.C. § 3301-51-09.

###   B.  **PLAINTIFFS' ARGUMENTS**

   Plaintiffs make four major arguments: (1) the IHO and SLRO erred by failing to find that

Defendant did not properly evaluate and identify A.K.'s educational needs; (2) the IHO and

SLRO erred in not finding that Defendant's IEP team violated the IDEIA's procedural and

substantive mandates for developing A.K.'s April 25, 2013 IEP; (3) the IHO and SLRO erred by

failing to find that Defendant failed to offer A.K. appropriate ESY for the 2013 summer; and (4)

the IHO and SLRO erred in allowing and relying upon retrospective testimony and evidence

improperly admitted into the record.  ECF Dkt. #17 at 4.  Additionally, Plaintiffs allege that they

are entitled to reimbursement from Defendant for their expenditures in sending A.K. to Monarch. *Id.* at 21-22.  Each argument will be addressed in turn.

Plaintiffs brought a separate cause of action against the same Defendant in *Kornblut v. Hudson City Sch. Dist. Bd. Of Educ.*, No. 5:14CV1986 (N.D. Ohio September 2, 2015) (Lioi, J.). In *Kornblut*, substantially similar arguments were made regarding A.K.'s sister.  On September 2, 2015, *Kornblut* was decided and all of Plaintiffs' assignments of error were overruled, the decision of the IHO, as affirmed by the SLRO, was affirmed, and it was determined that Plaintiffs were not entitled to any reimbursement.  *Id.* at 26.

### i.   DEFENDANT PROPERLY EVALUATED AND IDENTIFIED A.K.'s EDUCATIONAL NEEDS

Plaintiffs argue the IHO and SLRO erred by failing to find that Defendant did not properly evaluate and identify A.K.'s educational needs, namely, that Defendant's failure to evaluate the potential harm of A.K.'s transitional needs in determining her LRE led to a denial of FAPE.  In support of their assertion, Plaintiffs claim that Defendant did not conduct any evaluation regarding the trauma level of A.K. or have anyone on the IEP team that specialized in children who have suffered significant trauma at a young age.  ECF Dkt. #17 at 10.  Plaintiffs assert that they were left to seek out a private evaluation of A.K. since Defendant failed to consider seeking out an expert after the death of A.K.'s mother.  *Id.;* (citing Ex. Q at P00237-238).

Defendant contends that Plaintiffs do not point to anything on the record when asserting that Defendant was aware that A.K. had been traumatized.  ECF Dkt. #19 at 17.  Continuing, Defendant claims that based upon the 2011 reevaluation team report, Defendant did not believe that any additional assessments were necessary, and Grandparents did not request any additional assessments until the creation of the 2013-2014 IEP.  *Id.*  Defendants also assert that, despite Plaintiffs' arguments to the contrary, a reevaluation was not required under the regulations, citing the opinion of the SLRO.  SLSO Final Decision and Entry at 21 ("Grandparents instead argue that [Defendant] should have determined that a reevaluation was warranted once it became aware

-9-

of Grandparents' expert's concerns in the summer of 2013. This is not what the regulation requires.").

Further, Defendant argues that it recognized Dr. Lovinger's report by immediately reconvening the IEP team to discuss the implications of the report and to create a comprehensive transition plan, and obtained the services of Dr. DePolo to gain insight into Dr. Lovinger's report and to ensure the transition would not be harmful to A.K. ECF Dkt. #19 at 18. Continuing, Defendant asserts that, contrary to Grandparents' implication, Dr. Lovinger did not diagnose A.K. with PTSD, that Dr. DePolo raised concerns about Dr. Lovinger's report, that PTSD and autism share many characteristics, and that Defendant cannot be held responsible for failing to identify PTSD where Grandparents' own expert did not identify PTSD. *Id.*

Defendant's arguments are compelling. Plaintiffs do not point to any item in the record that suggests Defendant knew that A.K. had experienced a high level of trauma, and do not refute this contention in their rebuttal. Even if Defendant did know that A.K. was traumatized, the undersigned must give more weight to an agency's determination on matters for which educational expertise is relevant. *Deal*, 392 F.3d at 849. Here, Plaintiffs clearly indicate that the allegation is that Defendant failed to "properly evaluate and identify A.K.'s educational needs." ECF Dkt. #17 at 10. Thus, the undersigned must give more weight to the determinations made by the IHO and SLRO, both of which indicated that Defendant properly evaluated and identified A.K.'s educational needs. However, the Court may not simply adopt state administrative findings without an independent reexamination of the evidence, nor substitute its own notions of sound educational policy for those of school authorities. *Woods*, 487 Fed. App'x 973.

In the instant case, both the IHO and SLRO ruled in favor of Defendant on the instant matter, in which educational expertise is relevant. Plaintiffs have failed to show that Defendant was aware of A.K.'s extreme trauma prior to Dr. Lovinger's report. Plaintiffs fail to highlight any law, whether statutory or case law, that would have required Defendant to undergo a reevaluation once Defendant became aware of Dr. Lovinger's concerns. Additionally, the SLRO has already indicated that the law does not require that Defendant complete a reevaluation at such a time. SLRO Final Decision at 21. Further, once Defendant learned of Dr. Lovinger's concerns

-10-

regarding A.K., Defendant responded by assembling a new IEP and attempting to obtain a release to speak with Dr. Lovinger.  ECF Dkt. #19 at 13; Exs. 7, 8.  Grandparents responded by indicating that they would not sign the release forms because they had already made the decision not to transition A.K. to Hudson, had initiated an administrate due process proceeding, and had filed a request for injunctive relief in federal court.  ECF Dkt. #19 at 13; Ex. 4.

Both the preponderance of the evidence and the determinations made during the state administrative process weigh in favor of Defendant.  Plaintiffs have not established that defendant failed to properly evaluate and identify A.K.'s educational needs.

Accordingly, the undersigned recommends that Plaintiffs' assignment of error alleging that Defendant failed to properly evaluate and identify A.K.'s educational needs be overruled.

### ii. DEFENDANT'S IEP TEAM DID NOT VIOLATE THE IDEIA'S PROCEDURAL AND SUBSTANTIVE MANDATES

Plaintiffs assert that the IHO and SLRO erred in not finding that Defendant's IEP team violated the IDEIA's procedural and substantive mandates for developing A.K.'s April 25, 2013 IEP.  ECF Dkt. #17 at 11.  To support this assertion, Plaintiffs claim that the April 25, 2013 IEP was inappropriate and denied A.K. FAPE because the IEP contained insufficient present levels of performance and goals that are unable to be measured.  *Id.*  Plaintiffs argue that the IHO erred in finding that the IEP's problematic goals may have been due to Grandparents having control of the flow of information from Monarch, and the SLRO erred in finding that Defendant's IEP team was limited to writing the IEP based on the information provided by Monarch.  *Id.*  Continuing, Plaintiffs argue that Defendant's IEP team had the responsibility, and the ability, to request additional assessments, information, or clarification to ensure that the IEP offered FAPE.  *Id.*  In support of this assertion, Plaintiffs cite O.A.C. § 3301-51-07(C):

> The child's school district of residence is responsible for ensuring that the requirements of this rule are met regardless of which school district, county board of MR/DD, or other educational agency implements the child's IEP.  This includes the responsibility for initiating and conducting meetings for the purpose of developing, reviewing, and revising the IEP of a child with a disability.

*Id.*

Plaintiffs claim that Monarch was ready, willing, and able to provide information to Defendant at Defendant's request.  ECF Dkt. #17 at 11.  To support this claim, Plaintiffs point to Ms. Hutchinson's testimony stating there was no indication from Monarch that A.K.'s educational team was reluctant to give information, or that they were unwilling to share information with Defendant's IEP team.  *Id.*; Tr. 507-08.  Plaintiffs also contend that, through email correspondence, A.K.'s service providers at Monarch provided Defendant's IEP team with information regarding A.K.'s present levels of performance and appropriate measurable goals. ECF Dkt. #17 at 11; Ex. T at P00264-268; Ex. 37.  Additionally, Plaintiffs argue that Ms. Pitlor offered to meet or talk with Defendant's representatives should they request any additional information, but none of Defendant's representatives ever contacted Ms. Pitlor or requested additional information.  ECF Dkt. #17 at 11-12; Ex. T at P00251.

Plaintiffs' second argument is broken into several sub-topics alleging that: (1) Defendant's IEP team members changed portions of A.K.'s goals without relying on any data or knowledge of A.K.'s unique learning style; (2) the April 25, 2013 IEP fails to comply with the IDEIA by failing to provide appropriate accommodations and modifications; (3) the IEP team failed to consider the potential harm when determining A.K.'s LRE placement; and (4) [Defendant] denied A.K. FAPE when it predetermined A.K.'s LRE and deprived [Grandparents] of meaningful participation.  ECF Dkt. #17 at 12, 14, 16, 17.  Each argument will be addressed in more detail below once Defendant's general arguments have been discussed.

Defendant argues that its IEP team did not violate the IDEIA's procedural and substantive mandates for developing A.K.'s April 25, 2013 IEP.  ECF Dkt. #19 at 18.  Defendant cites to multiple exhibits and testimony on the record in support of this assertion.  *Id.*; Exs. 8, 27, 34, 36-39; Tr. 38-39.  Continuing, Defendant asserts that Grandparents acknowledged that Monarch provided Defendant with A.K.'s progress reports, present levels of performance, and recommended goals and objectives. ECF Dkt. #19 at 19; Exs. 34, 36-38, 45; Tr. 395-96, 491, 509-10, 786-87, 793-94, 925-27, 985-86.  Defendant claims that based on the information in its possession, Defendant believed that it had all the information needed to develop A.K.'s IEP. ECF Dkt. #19 at 19.

Further, Defendant argues that the federal regulations, which are reflected in Ohio's Operating Standards and the IEP form mandated by the state of Ohio, require that in developing an IEP the IEP team consider: (1) the strengths of the child; (2) the concerns of the parents for enhancing the education of their child; (3) the results of the initial or most recent evaluation of the child; and (4) the academic, developmental, and functional needs of the child.  ECF Dkt. #19 at 19 (citing 34 C.F.R. § 300.324(a); O.A.C. § 3301-51-07(L)(1)(a)).  Defendant contends that Plaintiffs cannot establish by a preponderance of the evidence that A.K.'s IEP did not take these requirements into account.  ECF Dkt. #19 at 19.

### a.  GOALS 1, 2, 3, 4, 5, AND 6

Plaintiffs argue that Goals 1, 2, 5, and 6 in A.K.'s April 2013 IEP do not contain present levels of performance or baseline information, rendering these Goals as unmeasurable because there is no beginning point in which to compare progress.  ECF Dkt # 17 at 13.  Plaintiffs contend that these unmeasurable Goals render the IEP substantively in violation of the IDEIA.  *Id.* Defendant contends that the IDEIA specifically provides that an IEP be read as a whole and that the IEP does not need to include information under one component that is already outlined in another.  ECF Dkt. #19 at 20 (citing 34 C.F.R. § 300.320(d); O.A.C. § 3301-51-07(H)(4)).

Specifically, Plaintiffs allege that Goal 1 requires A.K. to read and demonstrate comprehension of a passage at her instructional level, however, Goal 1 fails to identify A.K's instructional level and does not provide information on her ability to answer "who" and "where" questions.  ECF Dkt. #17 at 13.  Continuing, Plaintiffs argue that Goal 1 does not contain information presented to identify which seventy-five words A.K. will decode, and that A.K. requires visual propting for decoding, which the IEP does not provide.  *Id.*  For these reasons, Plaintiffs believe A.K. will not be able to make progress on Goal 1.  *Id.*

Defendant contends that A.K.'s profile reflects that she is receiving "functional academics" and describes the words that she is able to read and those words that require verbal prompts.  ECF Dkt. #19 at 20.  Defendant highlights that A.K.'s profile also reflects that she can read "basic text."  *Id.;* Ex. 27 at BOARDAK00255.  The above information is reflected in the present levels of performance described in Goal 1 and is clarified in the specially designed

instruction section of A.K.'s IEP, which states that A.K. will receive 1:1 specialized instruction in the area of "functional reading."  ECF Dkt. #19 at 20; Ex. 27 at BOARDAK00269.  Defendant correctly points out, and Plaintiffs do not prove otherwise, that there is no legal precedent indicating that A.K.'s IEP had to identify seventy-five new sight words that Defendant intended to introduce to A.K.  ECF Dkt. #19 at 20.  Further, Defendant is correct in asserting that Goal 1 specifically states that A.K. will read and demonstrate comprehension with visual supports, and the services section of the IEP reflects 1:1 specialized instruction including visual supports.  *Id.*; Ex. 27 at BOARDAK00257-269.  Defendant successfully defeats Plaintiffs' claims regarding Goal 1 through citations to the record indicating that Plaintiffs' assertions are incorrect.  Accordingly, there is nothing on the record to support Plaintiffs' assertion that A.K. will not be able to make progress on Goal 1.

Plaintiffs assert that Goal 2 indicates that A.K. will demonstrate number sense and computation skills by adding and subtracting numbers independently in one year's time.  Further, Plaintiffs contend that Goal 2 does not indicate what set of numbers (either 1-10 or 1-100) A.K. will use to add or subtract.  Plaintiffs argue that this information is necessary to measure Goal 2, but does not adequately explain how the fact that the IEP does not specify the number set would make Goal 2 unmeasurable.

Goal 2 is sufficiently measurable.  Defendant highlights that Objective 2.1 states that A.K. will solve "single digit subtraction problems."  Ex. 27 at BOARDAK00259.  Objective 2.2 states "A.K. will solve double digit addition problems without regrouping."  *Id.*  Objectives 2.1 and 2.2 are quite clear.  Additionally, Section 7 of the IEP indicates that A.K. will receive "[s]pecialized instruction in the area of functional mathematics and number sense to include guided and repeated practice, manipulatives, visual support, and a multi sensory approach."  *Id.* at BOARDAK000269.  Plaintiffs wholly fail to explain how Goal 2 is unclear or unmeasurable.

Plaintiffs argue that Goal 5 is unmeasurable because it does not specify how many minutes A.K. is expected to demonstrate the expected behavior, or how many minutes A.K. is expected to remain self-regulated.  ECF Dkt. #17 at 14.  Defendant contends that the measurement is not how many minutes A.K. can attend to a task, but instead whether A.K. is able

to meet social and classroom behavioral expectations by using calming strategies.  ECF Dkt. #19 at 21.  While Defendant's assertion appears to be correct regarding Objective 5.2, it is unclear whether Defendant is correct regarding Objective 5.1.  Ex. 27 at BOARDAK00262.  Either way, Plaintiffs cite no law or regulation indicating that the IEP is required to list how many minutes the child is expected to perform the expected behavior or remain self-regulated.  According, Plaintiffs have failed to demonstrate how Goal 5 cannot be measured.

The IHO agreed that Goal 6, a speech and language goal, was not measurable.  IHO Final Decision at 35.  However, the SLRO found that it would be appropriate for the IEP to have Goal 6 establish baseline data at some unknown time in the future.  SLRO Final Decision and Entry at 29.  Plaintiffs argue that there is no excuse for Goal 6 to be written without a baseline, especially when a baseline could have been obtained by contacting Monarch.  ECF Dkt. #17 at 14.  Defendant contends that its speech language therapist believed that she had sufficient data to write an annual goal and objectives, and that she would establish a new baseline and demonstrate progress by improving A.K.'s performance twenty-five percent over that baseline.  ECF Dkt. # 19 at 21-22.  Here, it would be improper for the Court to set aside the SLRO's findings because Plaintiffs have not provided evidence that makes it more likely than not that the SLRO's decision was not justified.  The Court must provide more weight to an agency's decision on matters for which educational expertise is relevant.  *See Deal*, 392 F.3d 849.  Plaintiffs have failed to provide sufficient evidence for the Court to substitute its own notion of sound educational policy for those of the school authority under review.  *See Woods*, 487 Fed. App'x at 973.  Accordingly, Plaintiffs have failed to prove how Goal 6 invalidates A.K.'s IEP.

Regarding Goal 3, Plaintiffs allege that both the IHO and SLRO ignored sufficient evidence establishing that A.K. is unable to learn orally.  ECF Dkt. #17 at 14.  A.K.'s teacher at Monarch testified that A.K. was a visual learner and therefore would not have had a goal focusing on oral direction with gesture prompts.  Tr. at 1218.  Defendant highlights progress reports from Monarch that indicate that as of January 2013, A.K. could complete academic tasks with minimal gesture support.  ECF Dkt. #19 at 22; Ex. 45 at BOARKAK00365; Tr. 1216.  Plaintiffs fail to provide any argument to this point beyond stating, "Goal 3 is not simply

educators disagreeing between the best educational methods to utilize," and including a citation that does not support the assertion. As above, Plaintiffs have failed to provide sufficient evidence for the Court to substitute its own notion of sound educational policy for that of the school authority under review. *See Woods*, 487 Fed. App'x at 973. Plaintiffs have failed to show how Goal 3 gives rise to a flawed IEP.

Regarding Goal 4, Plaintiffs argue that the Goal is not reasonably calculated to allow A.K. to receive some educational benefit because the objectives each require a different method of providing the information and because there was no data to indicate that A.K. was capable of performing Goal 4. ECF Dkt # 17 at 14. Section 7 of the IEP indicates that A.K. will be provided with specialized 1:1 instruction on this Goal. Ex. 27 at BOARDAK00269. Additionally, Plaintiffs provide no law or regulation suggesting that a goal that may be difficult for the child to achieve presents any type of problem for the IEP. Plaintiffs have failed to show how the Goals in A.K.'s IEP were not reasonably calculated so that A.K. may receive a meaningful educational benefit from the Goals.

### b. ACCOMMODATIONS AND MODIFICATIONS

Plaintiffs next argue that the SLRO erred in finding that Grandparents failed to raise their concerns about accommodations and modifications at the April 25, 2015 IEP meeting, and, as such, waived their right to disagree with the accommodations and modifications section of the IEP. ECF Dkt. #17 at 15. Plaintiffs claim that A.K.'s April 25, 2013 IEP failed to identify any specific accommodations required for A.K. to attend class. *Id.* Defendant thoroughly debunks Plaintiffs' position by highlighting that A.K.'s IEP recognized her need for a significantly modified curriculum in functional reading goals, math goals, specially designed services regarding both her functional reading goals and math goals, and modifications to the general education curriculum in science, social studies, math, and language arts. ECF Dkt. #19 at 24; Ex. 27 at BOARDAK00255, 257, 259-60, 269, 270. Section 11 also addressed A.K.'s modified curriculum, described the LRE, and indicated that A.K. required specialized instruction in a resource setting for reading, math, social studies, and science. Ex. 27 at BOARDAK00274. Further, Defendant points to portions of the Transcript indicating that Defendant and

-16-

Grandparents did discuss A.K.'s modified curriculum at the April 25, 2013 meeting.  ECF Dkt. #19 at 24; Tr. 515-16, 539-40, 815.

Plaintiffs assert that identifying that A.K. required accommodations, but not specifying what those accommodations were was inadequate, and that an IEP's failure to adequately provide modifications does not provide a sufficient basis for the IEP team to develop an appropriate program and placement recommendations.  ECF Dkt. #17 at 15.  Plaintiffs further assert that Ohio Department of Education has indicated that "[t]he type of modification and the extent of the modification must be clearly identified in the services section of the IEP."  *Id.* (citing the Ohio Department of Education's IEP Annotations).  As to the latter point, Defendant correctly points out that the Ohio Department of Education's IEP Annotations are not law, and Defendant was not bound to strictly comply.  Further, Defendant did specify what accommodations were necessary by indicating the different topics and courses in which A.K. would need accommodations, as discussed above.  Defendant did not simply assert that accommodations were required, but, rather, identified specific areas where accommodations were necessary and, on some occasions, to what extent the accommodations were necessary.  Accordingly, Plaintiffs' arguments that Defendant failed to provide appropriate accommodations and modifications are without merit.

### c.    LRE

Plaintiffs argue that Defendant failed to consider the potential harmful effects on A.K. when Defendant's IEP team determined to place A.K. in the Hudson City School District.  ECF Dkt. #17 at 16.  Continuing, Plaintiffs contend that A.K. has a documented history of difficulty with transitions, and that a transition from Monarch may result in a regression of A.K.'s language and communication skills, as well as her behavior.  *Id.*  Plaintiffs discuss a single case from a district court in Hawaii in support of their assertion that the failure to discuss the potential harm to A.K. at the time the LRE was determined deprived Grandparents of meaningful input.  *Id.* at 16-18.

Plaintiffs fail to note that the instant case is distinguishable from the case cited because Grandparents signed off on the 2013-2014 IEP and indicated that they wished the transition to begin taking place.  Ex. 23.  Defendant also contacted J.K. about scheduling a meeting to discuss

-17-

slowly transitioning A.K. into Hudson City Schools.  Ex. 20.  Plaintiffs wholly fail to explain how Grandparents were deprived of meaningful input, despite the fact that Grandparents not only agreed to the 2013-2014 IEP, but also received offers from Defendant to discuss A.K.'s transition.  Further, there is no requirement for a written transition plan in an IEP, and Grandparents do not point to any item in the record that indicates that Grandparents requested a transition plan and Defendant did not comply with the request.  20 U.S.C. § 1414(d)(1)(A)(i)(VIII); 34 C.F.R. §§ 300.320(B), 300.43(a).  Defendant's IEP team adequately considered the potential harm to A.K. when determining A.K.'s LRE.

#### d.  **FAPE**

Next, Plaintiffs allege that Defendant denied A.K. FAPE when it predetermined A.K.'s LRE and deprived Grandparents of meaningful participation.  Plaintiffs only arguments in support of this assertion are that there was no discussion of the LRE at the April 25, 2013 meeting, and that a representative of Defendant, Ms. Hutchinson, predetermined that Grandparents would continue to pay for A.K. to attend Monarch.  ECF Dkt. #17 at 19.

Defendant points to numerous instances on the record that clearly refute Plaintiffs' conclusion that Defendant predetermined A.K.'s LRE, and Plaintiffs' argument that Grandparents were deprived of meaningful participation has already been addressed in the section immediately above.  Grandparents attended a 3.5 hour long IEP meeting, accompanied by an advocate, to review the IEP draft with the IEP team.  Tr. 364-66, 368-69, 510-11, 535-36, 867-68.  During the meeting, Defendant's IEP team spoke with Grandparents and answered Grandparents' questions.  Ex. 26, 29; Tr. 30-31, 370-71, 539-40, 542, 821-22.  Grandparents made no request that Defendant's IEP team consider whether A.K. would be best served by continuing her education at Monarch.  Tr. 36, 372-73, 412-13, 868.  Finally, as stated above, Plaintiffs make no attempt to explain away the fact that Grandparents consented to the 2013-2014 IEP and requested that it be implemented so that A.K. could begin attending Hudson City Schools.  Ex. 23.  Accordingly, Defendant did not deny A.K. FAPE, predetermine A.K.'s LRE, or deprive Grandparents of meaningful input.

Accordingly, the undersigned recommends that Plaintiffs' assignment of error alleging that Defendant's IEP team violated the IDEIA's procedural and substantive mandates be overruled.

### iii.   DEFENDANT OFFERED A.K. APPROPRIATE ESY SERVICES FOR THE SUMMER OF 2013

The next argument presented by Plaintiffs is that the IHO and SLRO erred by failing to find that Defendant failed to offer A.K. appropriate ESY services for the 2013 summer.  In support of their argument, Plaintiffs only state that the IHO and SLRO erred, and that there was no discussion as to how ESY services were determined for A.K.  ECF Dkt. #17 at 19.

An ESY plan is discussed on the record.  Ex. 27 at BOARDAK072.  Further, the record indicates that Grandparents decided to send A.K. to a summer camp, rather than ask the Defendant to provide ESY services, because Grandparents wanted A.K. to attend a program hosted by Monarch.  Tr. 1259-60.  Since A.K. already had plans for the 2013 summer, Defendant had no reason to offer ESY services to A.K.  Plaintiffs cannot satisfy their burden of showing that the ESY services were inappropriate.

Accordingly, the undersigned recommends that Plaintiffs' assignment of error alleging that Defendant failed to offer ESY services be overruled.

### iv.   TESTIMONY RELIED UPON BY THE IHO AND SLRO WAS NOT RETROACTIVE

In their final argument made as to the merits of the case, Plaintiffs contend that the IHO and SLRO erred in allowing and relying upon retroactive testimony and evidence improperly admitted to the record.  ECF Dkt. #17 at 19.  Plaintiffs claim that the IHO allowed retroactive testimony by Defendant's staff regarding A.K.'s IEP, and the SLRO erred in allowing reliance upon such testimony.  *Id.* at 20.  Plaintiffs assert that an IEP must be reviewed precisely in accordance with the "four corners" of the document so that the achievement of progress can be accurately measured and reported.  *Id.* at 19.

-19-

Plaintiffs fail to explain how they are able to concurrently and successfully argue that testimony by Defendant's staff and Dr. DePolo was improperly admitted and relied upon, yet rely heavily on Dr. Lovinger's evaluation, which was also prepared post-IEP.  Further, the vast majority of the testimony provided by Defendant's staff discusses the circumstances surrounding the creation of A.K.'s IEP, rather than attempting to add elements or services in addition to those included in the IEP, contrary to Plaintiffs' arguments.  Throughout the duration of Plaintiffs' argument that the IHO and SLRO improperly allowed the testimony of Defendant's staff and Dr. DePolo, Plaintiffs cite to only three pages of the 1,663 page transcript where this allegedly improper testimony is presented, despite alleging that the retroactive testimony spanned discussion of LRE, service settings, support settings, delivery of services, time spent providing services, added prompts to skills, modified work, and document revisions.  ECF Dkt. #17 at 20.  Further, the allegedly retroactive testimony presented by Plaintiffs merely discusses how Defendant would handle subsequent building transitions and a vague reference to participation in communication support groups.  *Id.*  Plaintiffs cite no law in support of their assertion that hearing testimony regarding the creation of the IEP is retroactive, and even if Plaintiffs could support this argument, the topics discussed in the alleged retroactive testimony are hardly central to the case in chief, and the amount of alleged retroactive testimony is deficient to constitute an error in the decisions of the IHO or SLRO.

Plaintiffs also attempt to argue that the due process complaint, filed the day before the April 25, 2013 IEP meeting, precluded the IHO or SLRO from reviewing the subsequent transition plan and amended IEP developed in August 2013.  ECF Dkt. #17 at 20-21.  Plaintiffs cite no law in support the assertion that the filing of a due process complaint creates a barrier excluding review of evidence created after the filing.  Further, the IDEIA allows for a resolution session to be held fifteen days following a request for due process to provide the district with an opportunity to resolve the complaint.  20 U.S.C. § 1415(f)(1)(B).  This fifteen day window supports Defendant's assertion that the IDEIA actually contemplates the parties working together to reach a solution.  ECF Dkt. #19 at 27.  There is no basis for Plaintiffs' argument that the filing

of a due process complaint creates a barrier for review of any documents prepared during subsequent attempts to resolve a complaint regarding a student's IEP.

Accordingly, the undersigned recommends that Plaintiffs' assignment of error alleging that the IHO and SLRO improperly allowed retroactive testimony be overruled.

### C.    REIMBURSEMENT

A school district of residence is not required to pay for the cost of education, including special education and related services, of a child with a disability attending a nonpublic school or facility if the school district made FAPE available to the child and the parents elected to place the child in a nonpublic school or facility.  34 C.F.R. § 300.148(a); O.A.C. § 3301-51-02(L)(1). Based on the above discussion, Defendant's proposed IEP made FAPE available to A.K., and Grandparents chose to place A.K. in a nonpublic school.

Accordingly, Plaintiffs are not entitled to reimbursement under the IDEIA.

### IV.    CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court overrule all of Plaintiffs' assignments of error, affirm the decision of the IHO, as affirmed by the SLRO, and DENY Plaintiffs' motion for judgment on the administrative record (ECF. Dkt. #17).


Date: September 8, 2015                              */s/ George J. Limbert*
                                                     GEORGE J. LIMBERT
                                                     UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).